# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Life Share Collateral Holdings, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>Kenneth Rifkind, an individual, )<br>Ty Javellana a/k/a Tyrone N. )<br>Javellana, an individual, )<br><br>Defendants. ) | Civil Action No. |

## COMPLAINT

NOW COMES the Plaintiff, Life Share Collateral Holdings, LLC ("LSCH"), by its attorneys, Adam M. Simon, The Simon Law Firm, and Thomas H. Schaefer, Erstad & Riemer, P.A., and complaining of Defendant, Kenneth Rifkind ("Rifkind"), an individual and Ty Javellana a/k/a Tyrone N. Javellana ("Javellana"), an individual, and states as follows:

## NATURE OF THE ACTION

1.      LSCH brings this action under Minnesota law for (i) a Default on a Loan and Personal Guaranty, (ii) common law fraud in the submission of loan and insurance applications which included fraudulent financial statements (the "Fraud"), and (iii) professional negligence against a certified public accountant arising out of his preparation of a financial statement used to perpetrate the Fraud.

## PARTIES AND VENUE

2.      LSCH is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in the City of Chicago, County of Cook in the State of Illinois.

3.      LSCH is the successor-in-interest to the original Lender, Life Share Financial, LLC ("LIFE SHARE") with regard to the premium finance loan that is the subject matter of this case.

4.      At all relevant times Rifkind was an individual residing in North Miami Beach, County of Dade, State of Florida.

5.      On or about December 16, 2008, Rifkind formed the Kenneth Rifkind 2008 ILIT (the "Rifkind Trust"), a common law trust formed in the State of Minnesota and to be governed pursuant to the laws of the State of Minnesota. Defendant appointed Wells Fargo Bank, N.A., as Trustee of the Rifkind Trust, and the Trustee's principal place of business is located in the City of Minneapolis, County of Hennepin, State of Minnesota.

6.      At all relevant times, Javellana was or held himself out to be a Certified Public Accountant whose principal place of business is located in the City of Hallandale, County of Broward, State of Florida.

7.      On or about January 28, 2009, the Rifkind Trust purchased a life insurance policy on the life of Rifkind from Lincoln National Life Insurance Company, policy #JJ7064492 (the "Policy").

8.      The Policy was issued by Lincoln National to the Rifkind Trust in the state of Minnesota, and the Policy states that it is to be governed by the laws of Minnesota.

9.      On or about February 6, 2009, the Rifkind Trust, as Borrower, and Rifkind as Insured entered into a Loan Agreement with Life Share Financial, LLC as the Lender.  The purpose of the Loan Agreement was to provide financing for the payment of premiums for the purchase of the Policy.

10.     On or about February 6, 2009, Rifkind executed a personal guaranty in favor of Lender (the "Guaranty"), and its successors and assigns, in order to induce Lender to make the Loan to the Rifkind Trust.

11.     On or about February 6, 2009, Lender made the Loan to the Rifkind Trust and the payment of premium was made to put the Policy in force.  The life insurance policy was then delivered to the Rifkind Trust at the Trustee's office in Minnesota.

12.     Venue is proper in the U.S. District Court for the District of Minnesota pursuant to Rifkind's consent to jurisdiction set forth in the Loan Documents, and because the transactions or some part thereof out of which LSCH's causes of action arose occurred in the County of Hennepin in the State of Minnesota.  Further, the Loan Documents, including the Personal Guaranty expressly provide that the rights and obligations of the parties thereunder are to be determined in accordance with the laws of the State of Minnesota.

## COUNT I

## DEFAULT OF LOAN NOTE AND PERSONAL GUARANTY

13.     LSCH restates and realleges Par. 1-12 above, as Par. 13 of Count I.

14.     On or about February 6, 2009, for good and valuable consideration, Borrower and Rifkind executed a Loan and Security Agreement and Loan Note in favor of the Lender. Rifkind also executed a Personal Guaranty of a portion of the loan obligations. (The Loan and Security Agreement, Loan Note and Personal Guaranty shall be collectively referred to herein as the "Loan Documents".)

15.     Pursuant to the Loan Documents, Rifkind was obligated to pay all unpaid principal, interest and any other outstanding obligations on or before, under acceleration and default provisions, the maturity date ("Maturity Date").

16.     Borrower and Rifkind defaulted under the Loan Documents by:

(i)     failing to pay to LSCH the amounts due under on or before the Maturity Date;

(ii)    failing to pay premiums required to keep the Policy in force; and

(iii)   allowing the Policy to lapse.

17.     On or about February 18, 2011, LSCH sent a demand letter to the Rifkind Trust and Rifkind regarding amounts due under the Loan Documents.

18.     Despite LSCH's written demand, Borrower has failed to pay the amounts due LSCH under the Loan Documents.

-4-

19.     As a direct and proximate result of Borrower's default under the Loan Documents, LSCH has suffered damages equal to all principal and interest due pursuant to the terms of the Loan Documents.

20.     Pursuant to the terms of the Loan Documents, LSCH is also entitled to recover interest after default at the default interest rate, and recover its costs of enforcing the Loan Documents including but not limited to recovery of its costs and attorney's fees.

21.     Pursuant to the terms of the Guaranty, Rifkind personally guaranteed 25% of all sums owed by Borrower to Lender pursuant to the Loan Documents.

WHEREFORE, LSCH, prays for a judgment to be entered in its favor and against Defendant, Kenneth Rifkind, an Individual, for a sum in excess of $187,500.00 plus the cost of this action and reasonable attorney's fees together with such other relief as this Court deems just and proper.

## BACKGROUND – COUNT II

22.     On or about December 10, 2008, Rifkind submitted a Life Share Loan Application, a financial statement, tax returns and other supporting documentation as Rifkind's loan application for the Loan Note to Life Share Financial, Inc.

23.     On or about December 18, 2008, Rifkind submitted an application for life insurance to Lincoln National Life Insurance Company for a life insurance policy, with a death benefit of $5.8 Million.

24.     On both the Lincoln National Application and the Life Share Loan Application

and attached Financial Statement, Rifkind represented to Life Share and Lincoln National that Rifkind's net worth was in excess of $8 Million.

25.     The Life Share Loan Application, directly above Defendant's signature includes the following language:

"You hereby acknowledge and agree as follows:

(A)     You represent and warrant that all information set forth in this application or which has been or is hereafter made available to us by you or any of your representatives in connection with the transactions contemplated hereby is and will be complete and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained herein or therein not materially misleading in light of the circumstanced under which such statements are made;

(B)     You will supplement such information from time to time so that the representations in the preceding clause (A) remain correct;

(C)     We will use and rely on such information without independent verification;

(D)     Approval of the loan is subject to, among other things, satisfactory credit and collateral examination and completion by us of our due diligence; or internal approvals; payment of all agreed fees and costs; and the execution and delivery of the necessary legal documentation to give effect to the loan."

26.     The financial statement that Rifkind submitted with his Life Share Loan Application was prepared and signed off on by Javellana and Rifkind, and the Financial Statement contains the following representation by Javellana:

(a)     "I have compiled the accompanying statement of financial condition of Kenneth Rifkind as of January 9, 2009 in accordance with the Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.   The financial statements are intended to present the assets of Kenneth Rifkind at estimated current values and their liabilities at estimated current amounts.   This compilation is limited to presenting in the form of financial statements, information that is the representation of the individuals whose financial statements are presented."

## COUNT II

## FRAUD

27.     LSCH restates and realleges ¶1-¶26 above, as ¶27 of Count II.

28.     In December of 2008, Defendant, both independently and through his certified public accountant, made material representations to both Life Share Financial and Lincoln National regarding his financial condition and net worth.   These representations were contained in the Life Share application, Rifkind's Financial Statement and the Lincoln National life insurance application.

29.     The material representations regarding Rifkind's financial condition and net worth were false at the time they were made.

30.     Rifkind and Rifkind's representatives made material representations regarding Rifkind's net worth knowing them to be false or with reckless disregard for the truth or falsity of such representations.

31.     The Life Share Loan application and the Lincoln National life insurance application both contain language setting forth Rifkind's acknowledgment and agreement that the representations made by Rifkind in those applications would be acted and relied upon by the Lender.

32.     Rifkind intended to induce Life Share to rely on the misrepresentations contained in the applications when he submitted them to Life Share and Lincoln National.

33.     Life Share did in fact reasonably and justifiably rely upon the representations contained in the Life Share loan application, the Financial Statement, and the Lincoln National Life Insurance application when it made its decision to approve and make the loan to the Borrower subject to receipt of Rifkind's personal guaranty.

34.     Rifkind did in fact submit a personal guaranty, and Life Share subsequently made the loan.

35.     LSCH also reasonably and justifiably relied upon the representations contained in the Life Share loan application, the Financial Statement, the Lincoln National Life Insurance application when it made its decision to purchase the Loan from Life Share.

36.     As a direct and proximate result of Rifkind's material misrepresentations, LSCH suffered damages equal to the entire amount of the unpaid Loan.  In addition, LSCH is also entitled to recover interest after default at the default interest rate, and recover its costs of enforcing the Loan Documents including but not limited to recovery of its costs and attorney's fees.

WHEREFORE PLAINTIFF prays for a judgment to be entered in its favor and against Defendant, Kenneth Rifkind, an individual, for a sum in excess of $476,000.00 plus the cost of this action  reasonable attorney's fees together with such other relief as this Court deems just and proper.

## COUNT III

## PROFESSIONAL NEGLIGENCE

37.     LSCH restates and realleges ¶1-¶36 above, as ¶37 of Count II.

38.     Upon information and belief, when Javellana was retained by Rifkind to prepare a financial statement, Javellana knew that Rifkind needed the financial statement to provide to third party lenders, and insurance companies in support of applications for insurance and a premium finance loan.

39.     When Javellana prepared Rifkind's financial statement he knew that third party insurers and lenders would rely on the financial statement when making the decision to approve Rifkind's application for insurance and application for a premium finance loan.

40.     LSCH as successor in interest to LIFE SHARE did in fact reasonably rely on the Rifkind Financial Statement prepared by Javellana when it decided to approve and make the loan to Borrower.

41.     Despite the fact that the Financial Statement expressly provides that the financial statement states that it was accordance with the Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants, Javellana deviated from the standard of care held to a Certified Public Accountant in that Javellana failed to undertake any reasonable investigation or due diligence into the actual assets and liabilities owned individually by Rifkind.

42.     As a direct and proximate result of Javellana's deviation from the standard of care in the preparation of Rifkind's financial statement, LSCH was damaged when it made the decision to purchase the Loan in an amount equal to the entire amount of the unpaid principal of the Loan, plus interest, attorneys' fees and costs.

WHEREFORE PLAINTIFF prays for a judgment to be entered in its favor and against Defendant, Ty Javellana, an individual, for a sum in excess of $476,000.00 plus the cost of this action together with such other relief as this Court deems just and proper.

**ERSTAD & RIEMER, P.A.**

Dated: 1 / 8 / 11

By: _____
Thomas H. Schaefer (#0231587)
8009 34th Avenue South, Suite 200
Minneapolis, MN 55425
Direct Line: 952-837-3250
Direct Fax: 952-767-7050
E-Mail: tschaefer@erstad.com

and

Adam M. Simon
The Simon Law Firm
303 E. Wacker Drive, Suite 210
Chicago, IL 60601
Phone: 313-819-0730
Fax: 312-819-0773
E-Mail: asimon@chicagolaw.com


Attorneys for Plaintiff
Life Share Collateral Holdings, LLC